UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BRADLEY C. ROSEN,

                            Appellant,

        v.                            **MEMORANDUM AND ORDER**
                                                   19-CV-2895 (LDH)

PERSIO A. NUNEZ,

                            Appellee.

---

LaSHANN DeARCY HALL, United States District Judge:

Appellant Bradley C. Rosen, proceeding pro se,[1] appeals the bankruptcy court's March 29, 2019 decision (Craig, J.) ordering that he disgorge $25,000 in attorney's fees pursuant to 11 U.S.C. § 329.[2]

### BACKGROUND[3]

On April 10, 2014, Debtor-Appellee Persio A. Nunez filed a voluntary petition under Chapter 7 of the Bankruptcy Code. According to the petition, the primary assets of the estate were two parcels of real property. Debtor-Appellee is in a long-term relationship with Margarita Ferriera, a non-party to the bankruptcy proceeding.

On May 15, 2015, Appellant Bradley Rosen entered into a legal services agreement with Debtor-Appellee and Ferriera (the "May Retainer"). The May Retainer provides that "Attorney shall provide Clients with legal services that pertain to the various issues and actions involving the property located at 99-11 . . . , " including defending Debtor-Appellee and Ferriera against

---

[1] Appellant is an attorney, who has retired from the New York State Bar and is not admitted to practice in any other jurisdiction. (Appellant's Br. 37, ECF No. 10.)
[2] Debtor-Appellee opposed Appellant's brief solely on the grounds that Appellant's brief was untimely filed. (ECF No. 16.) As detailed in the Court's December 2, 2019 order, Appellant was granted an extension to file his opening brief, and therefore the Court will not consider this argument.
[3] Unless otherwise noted, the following facts are taken from the bankruptcy court's opinion below.

foreclosure. The May Retainer further provided that Debtor-Appellee and Ferriera, jointly and severally, would pay a flat fee of $20,000, which was paid in its entirety by Ferriera.

Appellant maintains that he learned of Debtor-Appellee's bankruptcy proceeding sometime in July 2015. (Appellant's Br. 9, ECF No. 10.) Soon thereafter, on August 4, 2015, Appellant executed a second retainer agreement with Debtor-Appellee and Ferriera (the "August Retainer"). The August Retainer called for a $50,000 flat fee for Appellant's legal services, which, was paid by Ferriera. The August Retainer provided:

> a. Regarding In Re Persio A. Nunez, Case No. 14-41746 (CEC) (the "Bankruptcy"). Attorney shall investigate, research and examine, in full depth and detail, the entirety of the Bankruptcy and any and all matters related, directly and/or indirectly, to it. The scope of Attorney's investigation shall include, but not be limited to, the propriety, legality and/or validity of: the manner in which the Bankruptcy Petition was created; the contents of the Bankruptcy Petition; all other filings made in the Bankruptcy; the conduct and actions of all parties who appeared in the Bankruptcy; the legitimacy of the basis of the claims of the Creditors; any other actions or proceeds related to any Creditor's claim (such as other lawsuits and/or liens and judgements [sic] obtained therein); and any transactions (such as loans) that are in any manner connected to any Creditor's claim. If Attorney discovers anything that he reasonably believes renders the Bankruptcy, or any Creditor claim filed therein, invalid, Attorney shall take any and all reasonable and permissible action to have same dismissed, voided or otherwise nullified.
> b. CLIENTS UNDERSTAND AND ACKNOWLEDGE THAT ATTORNEY SHALL NOT APPEAR OR REPRESENT EITHER [O]R BOTH OF THEM IN THE PENDING BANKRUPTCY [sic] ACTION, OR IN ANY OTHER BANKRUPTCY ACTION.

On February 21, 2018, Debtor-Appellee and Ferriera filed a joint letter with the bankruptcy court, entitled "Letter Requesting a Hearing," in which they indicated, *inter alia*, that they retained Appellant in 2015 to represent them in the bankruptcy case and related matters. On March 9, 2018, Debtor-Appellee informed the bankruptcy court that Ferriera had paid a total of $70,000 to Appellant. At that point, Appellant had never appeared as the attorney of record for Debtor-Appellee in the bankruptcy proceeding, nor disclosed the post-petition retainer

2

agreements and payments to the bankruptcy court. By order dated March 9, 2018, the bankruptcy court ordered Appellant to show cause why the court should not impose sanctions on Appellant for his failure to adequately represent Debtor-Appellee, find the Fee Agreement excessive pursuant to Bankruptcy Rule 2017, and order the fees returned. An order to show cause hearing was held on January 22, 2019.

On March 29, 2019, the bankruptcy court issued an opinion in which the court addressed: (1) whether Appellant was required to disclose legal fees paid or agreed to be paid pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b); and (2) if so, whether partial or total fee disgorgement was appropriate. *In re Nunez*, 598 B.R. 696, 699–700 (Bankr. E.D.N.Y. 2019). The bankruptcy court found that Appellant violated of his obligations under § 329(a) and ordered disgorgement of $25,000. *Id.* at 709. While the bankruptcy court found that the May Retainer should have been disclosed, the bankruptcy court did not order disgorgement of any funds paid under the May Retainer. *Id.* Nonetheless, the bankruptcy court found that the services provided pursuant to the August Retainer were in connection with the bankruptcy case and made without disclosure pursuant to § 329(a) and Bankruptcy Rule 2016(b). *Id.* Accordingly, the bankruptcy court ordered half of the fees paid pursuant to the August Retainer be disgorged. *Id.* This appeal followed.[4]

## STANDARD OF REVIEW

District courts have "jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a). The bankruptcy court's conclusions of law are reviewed *de novo* and findings of fact are reviewed for clear error. *In re Hyman*, 502

---

[4] Appellant does not appeal the bankruptcy court's findings with respect to the May Retainer. (Appellant's Br. 21.)

3

F.3d 61, 65 (2d Cir. 2007). However, matters left to a bankruptcy court's discretion, such as an order to disgorge fees pursuant to 11 U.S.C § 329, are reviewed for abuse of discretion. *See Miller v. Simpson*, 325 F. App'x 25, 26 (2d Cir. 2009) ("[The bankruptcy court's] decision to award, deny and disgorge attorneys' fees [is reviewed] for abuse of discretion."); *In re Pugh*, No. 18-CV-06508-JMA, 2020 WL 2836823, at *4 (E.D.N.Y. May 31, 2020) (reviewing order to disgorge fees pursuant to 11 U.S.C § 329 for abuse of discretion). A bankruptcy court abuses its discretion when its ruling "(1) rests on an error of law . . . or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions." *In the Matter of: Fletcher Int'l, Ltd.*, 661 F. App'x 124, 126 (2d Cir. 2016) (quoting *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007)).

## DISCUSSION

### I. Disclosure

Section 329(a) provides that:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) further obligates the attorney to file a supplemental statement "within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b). Appellant argues that the bankruptcy court erred in finding that the August Retainer was subject to § 329(a)'s disclosure requirement. (Appellant's Br. 26-33.) The Court disagrees.

4

The disclosure obligation arising under § 329(a) is "mandatory and not permissive, regardless of whether counsel will seek compensation from the estate, and is central to the integrity of the bankruptcy process." *In re McNeilly*, No. 15-30064 (AMN), 2017 WL 3737536, at *6 (Bankr. D. Conn. Aug. 28, 2017) (citing 3–329 *Collier on Bankruptcy* ¶ 329.01 (16th ed.)). When determining whether there have been Bankruptcy Code and Rule disclosure violations, the Second Circuit demands the court to construe the rules as inflexible and without exceptions for inadvertency or good faith. *See, e.g., Matter of Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir. 1981) (observing that if Bankruptcy Rule 215, a disclosure rule, "is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally"); *accord In re Laferriere*, 286 B.R. 520, 526 (Bankr. D. Vt. 2002) (collecting cases for the proposition that "[t]he approach within the Second Circuit has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertency (slipshodness) or good faith").

"The phrase 'in connection with the case' used in § 329(a) extends to services that will impact the bankruptcy case." *In re Chatkhan*, 496 B.R. 687, 693 (Bankr. E.D.N.Y. 2012) (citations omitted). Appellant presses that the bankruptcy court "misconstrued" the work to be performed under the August Retainer. (Appellant's Br. 29.) To prove his point, he sets out a multi-page account of all of the work that he did under the August Retainer that was unrelated to the bankruptcy proceeding, including the substantial amount of work done under the August Retainer related to Debtor-Appellee's foreclosure proceeding in state court and investigatory work that did not have any impact on the bankruptcy proceeding. (Appellant's Br. 31-32, 34-36.) Appellant cannot escape, however, that the very terms of the August Retainer cover representation that impact the bankruptcy case. Under the terms of the August Retainer,

5

Appellant agreed to "investigate, research and examine, in full depth and detail, the entirety of the Bankruptcy and any and all matters related, directly and/or indirectly, to it" and if he "discovers anything that he reasonably believes renders the Bankruptcy, or any Creditor claim filed therein, invalid," he agreed to "take any and all reasonable and permissible action to have same dismissed, voided or otherwise nullified." *In re Nunez,* 598 B.R. at 703-04. Moreover, according to Appellant, his "investigation" led him to believe that Debtor-Appellee's bankruptcy petition was fraudulently drafted. (Appellant's Br. 31-32.) Certainly, such investigation is strongly connected to the bankruptcy proceeding as it implicates the integrity of the entire proceeding.[5] Accordingly, the bankruptcy court did not err in finding that the, "[t]he August Retainer is unambiguously in connection with this bankruptcy case."[6] *In re Nunez,* 598 B.R. at 707.

That the fees were paid by a third-party who was jointly and severally liable for payment under the August Retainer, does not absolve Appellant's of his disclosure obligations. (Appellant's Br. 24.) As the bankruptcy court observed, where legal services are rendered or will be rendered in contemplation of or in connection with a bankruptcy case, both § 329(a) and

---

[5] Appellant's argument is that he was somehow absolved of his disclosure obligations because he attempted to report his suspicions of potentially criminal conduct to the United States Attorney's Office and the Office of the United States Trustee is unavailing. (Appellant's Br. 31). Lack of familiarity with the disclosure requirements resulting in an inadvertent failure to disclose does not excuse Appellant from his disclosure obligations. *See, e.g., In re Stewart*, 970 F.3d 1255, 1268 (10th Cir. 2020) (observing that lack of familiarity with disclosure requirements not a factor the bankruptcy court may consider in determining sanctions); *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees."); *In re Gorski*, 519 B.R. 67, 73 (Bankr. S.D.N.Y. 2014) (finding disclosure violation on behalf of divorce counsel even though the case law with respect to divorce counsel in bankruptcy "appears to be sparse").

[6] In a futile attempt to avoid such a result, Appellant makes much of the fact that the August Retainer included a disclaimer stating that he was not representing Debtor-Appellee in the Bankruptcy proceeding. (Appellant's Br. 13.) Appellant's argument proves too much. The disclosure requirements of §329 have a broad reach to include services that may impact the bankruptcy proceeding whether or not they are the subject of the retained services agreement. *See, e.g. In re Gorski*, 519 B.R. at 73 ("Given the broad application of the phrase 'in connection with' amongst the courts, and the cases demonstrating that the debtor's divorce proceedings taking place during a bankruptcy case are intertwined with the interests of the estate, the Court is convinced that the disclosure requirement of section 329(a) applies to [debtor's attorney]."). But of course, as highlighted above, the August Retainer on its face provided for an investigation into the bankruptcy proceeding and legal advice to be provided related to that investigation.

6

Bankruptcy Rule 2016(b) require the attorney disclose the source of compensation, "even if the source is not the debtor but a third party." *In re Nunez*, 598 B.R. at 705 (quoting 3 Collier on Bankruptcy ¶ 329.03).) There can be no doubt that the plain language of the statute supports such a reading. Section 329(a) provides that disclosure must be accompanied with a statement indicating "the source of such compensation." 11 U.S.C. § 329(a). The statute provides no exceptions. *See In re Frye*, 570 B.R. 27, 26 (Bankr. D. Vt. 2017) ("[T]he statute unequivocally identifies what payments must be disclosed: all fees for services 'in contemplation of' and 'in connection with' bankruptcy, from all sources."); *accord In re Chatkhan*, 496 B.R. at 694 ("Assuming, without deciding, that the retainer was not property of the estate, [the attorney] was nonetheless obligated to comply with § 329, [and] Bankruptcy Rule 2016(b)."); *In re Gorski*, 519 B.R. at 73 (noting that it is "irrelevant" that a third party paid a portion of debtor's attorney's fees for purposes of § 329(a) as the attorney was "plainly required to disclose 'the source of such compensation'"). In reviewing the bankruptcy court's conclusions of law *de novo* and findings of fact for clear error, the Court agrees with the bankruptcy court that failing to disclose the August Retainer was a violation of Appellant's § 329 disclosure obligations.

**II.     Disgorgement**

Having determined that Appellant violated his disclosure obligations, the Court now turns to the propriety of the bankruptcy court's June 14, 2019 disgorgement order. The $25,000 ordered disgorged was paid to Appellant by Ferriera, a non-party to the Bankruptcy Case. Appellant argues that the bankruptcy court lacked authority to order the disgorgement of fees that were not property of the estate. (Appellant's Br. 22-24.) On *de novo* review, the Court disagrees.

7

Few courts in this circuit have addressed the question of whether a bankruptcy court has jurisdiction to order disgorgement of fees that are not property of the estate. Those that have encountered the issue have found that "[t]he bankruptcy court may order the disgorgement of any payment made to an attorney representing the debtor in connection with a bankruptcy proceeding, irrespective of the payment's source." *In re Gorski*, 519 B.R. at 73 (quoting *In re Lewis*, 113 F.3d 1040, 1046 (9th Cir. 1997)); *accord In re Frye* 570 B.R at 31. For example, in *In re Frye*, the debtors' attorney, who was paid a total of $20,500 in connection with the bankruptcy case, was found to have violated the disclosure requirements of § 329(a) and Rule 2016(b). 570 B.R at 30-31. In that case, 88 percent of the fees had been paid by a third-party, the debtors' son. *Id.* at 33. There, like here, the attorney argued that the payments were made, at least in part, from outside of the bankruptcy estate, which meant that they should not be subject to disgorgement. *Id.* at 31. The court rejected that argument, and found that the fees—including those paid by the son—could be subject to a disgorgement order and ordered $10,250 disgorged. *Id.* at 31-33.

The court in *In Re Frye* did not offer a fulsome explanation for its outcome. However, the rationale underpinning such a ruling was well-explained by the Fourth Circuit in *In re Walters*, 868 F.2d 665 (4th Cir. 1989). There, the court was faced with a situation where a portion of the attorney's fees was paid with funds that were exempt from the bankruptcy estate, and the attorney argued that the relevant fee sharing agreement was not subject to court approval because it dealt only with exempt funds. *Id.* at 667-68. The Fourth Circuit disagreed and explained that § 329 is not "conditioned on the source of the payment," but rather on the "nature of the services rendered" in order to "protect the creditors *and the debtor* against overreaching by attorneys." *Id.* at 668 (emphasis in original) (discussing the purpose of § 329 in evaluating fees

8

for excessiveness under § 329(b)). *Id*. The Fourth Circuit went on to find that the fees exempt from the bankruptcy estate were nevertheless subject to the control of the bankruptcy court for disgorgement. *Id.*

The Fourth Circuit's view is shared by the Sixth, Ninth and Fifth Circuits. *See In re Kisseberth*, 273 F.3d 714, 718-19, 721 (6th Cir. 2001) (affirming bankruptcy court's disgorgement order which mandated the return of fees that were paid from funds outside of the bankruptcy estate due to § 329 disclosure violations), *opinion clarified sub nom. Henderson v. Kisseberth*, 24 F. App'x 539 (6th Cir. 2002); *see In re Lewis*, 113 F.3d at 1046 (rejecting attorney's argument that the source of payments should be considered in fashioning a disgorgement order because "[t]he bankruptcy court may order the disgorgement of any payment made to an attorney representing the debtor in connection with a bankruptcy proceeding, irrespective of the payment's source"); *Matter of Hargis*, 895 F.2d 1025, 1026 (5th Cir. 1990) (observing that the bankruptcy court could order fees paid from non-estate assets be disgorged, to the extent that such fees were not reasonable).[7] In sum, every bankruptcy court in this circuit and every circuit court that has considered the issue has determined that a bankruptcy court has jurisdiction to disgorge funds outside of the bankruptcy estate as a result of a § 329 violation. To decide otherwise, would make § 329's disclosure obligations toothless.[8] Accordingly, on *de*

---

[7] Appellant cited *In Re Hargis* in support of his position that "that a bankruptcy court only has jurisdiction over items that are "property of the estate." (Appellant's Br. 23 (citing *Matter of Hargis*, 887 F.2d 77, 79 (5th Cir. 1989).) However, *In Re Hargis* was ultimately clarified on rehearing, and therefore the opinion cited by Appellant is no longer good law within the Fifth Circuit. *See Matter of Hargis*, 895 F.2d 1025, 1025 (5th Cir. 1990) (clarifying its prior ruling because "[a]s the United States Trustee points out, 11 U.S.C. Section 329 authorizes the bankruptcy court to order an attorney to return fees paid for services rendered in connection with a bankruptcy proceeding, if those fees are determined by the court to be excessive, *regardless of their source*"(emphasis added)).
[8] That Ferriera and Debtor-Appellee were jointly and severally liable for paying the $50,000 under the August Retainer does not change the Court's view. Appellant argues that by ordering him to disgorge one half of that fee, the "bankruptcy court was, in essence, rewriting the August Retainer." (Appellant's Br. 25.) Appellant cites to no caselaw in support of this proposition, and in any event, the Court does not find this argument persuasive. Disclosure obligations are founded upon "the fiduciary obligation owed by counsel for the debtor to the bankruptcy court." *Futuronics Corp.*, 655 F.2d at 470 (affirming the district court's ruling that the bankruptcy court had abused

9

*novo* review, the Court finds that the bankruptcy court did not err in determining it had jurisdiction over funds paid to Appellant by a third party.

Appellant makes several policy arguments as to why the disgorgement order was either improper or unnecessarily harsh, or in other words, outside the range of permissible decisions. In a review of the disgorgement order for abuse of discretion, the Court disagrees.

Appellant seeks to appeal to the Court's pragmatism, arguing that it would be "pointless" to order the disgorgement of these funds to Ferriera, as she would simply repay Appellant the fees he was entitled to under the retainer. (Appellant's Br. 25.) In making this argument, the Appellant refers the Court to a Western District of Oklahoma case, where the bankruptcy court refused to order disgorgement of fees, in part, based on similar futility grounds. (Appellant's Br. 25 (citing *In re Stewart,* 583 B.R. 775, 777 (Bankr. W.D. Okla. 2018).) However, Appellant ignores that the bankruptcy court was subsequently reversed by the Tenth Circuit, which rejected this reasoning. *See In re Stewart*, 970 F.3d 1255, 1268 (10th Cir. 2020) (observing that the bankruptcy court's reasoning was "wholly inadequate"). Moreover, that it would be "pointless" to return the funds to Ferriera is not a legal argument that could compel this Court to find that the bankruptcy court abused its discretion in ordering disgorgement.

Appellant further argues that the $25,000 disgorgement does not serve the purpose of sanctions, and does not offer any specific deterrence, as Appellant is retired from practicing law. (Appellant's Br. 36-37.) However, around the country, "the sanctions imposed [for disclosure violations] have been harsh, going far beyond the need to compensate for the damage done or even to deter the specific offender." *In re Stewart*, 970 F.3d at 1264 (collecting cases). This "harshness of sanctions has had the desired deterrent effect," as there are "relatively few reported

---

its discretion by allowing any fees in light of disclosure violations); *accord In re Stewart*, 970 F.3d 1255, 1264 (10th Cir. 2020) ("The attorney's duty of disclosure is that of a fiduciary.").

cases of violations." *Id.* In other words, from a policy perspective, the goal of sanctions for disclosure violations is not only specific deterrence, but rather general deterrence. Here, again, Appellant's policy argument does not provide a legal basis for the Court to disturb the bankruptcy court's disgorgement order.

Lastly, Appellant argues that in another case in this circuit, *In re Gorski,* the Court only ordered disgorgement of $500 for a § 329 violation, which indicates that the $25,000 disgorgement order here was too harsh. (Appellant's Br. 38.) As the bankruptcy court below observed, it must tailor a sanction that is appropriate to the case before it, and full disgorgement is not "automatic." *In re Nunez*, 598 B.R. at 709 (quoting *In re Frye*, 570 B.R. at 31); *accord In re Stewart*, 970 F.3d at 1267 ("This is not to say that full disgorgement is always appropriate for failure to disclose under § 329. But it should be the default sanction, and there must be sound reasons for anything less."). Here, the bankruptcy court properly looked to the specific facts of the § 329 disclosure violation, noting that the August Retainer provided that Appellant represented Debtor-Appellee and Ferriera, and ordered disgorgement of half of the retainer accordingly. In sum, the $25,000 disgorgement order in this case is well within the range of permissible decisions, particularly as the bankruptcy court did not disgorge any of the $20,000 paid under the May Agreement. *See In re Frye*, 570 B.R. at 32-33 (ordering attorney disgorge $10,250 of $20,500 in compensation for disclosure violations, even where the attorney "devoted substantial time and energy to this bankruptcy case in spite of his charging a below-market rate and the Debtors' inability to pay for all services"); *see also In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees.").

11

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.

SO ORDERED.

Dated: Brooklyn, New York  
       March 12, 2021

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge